**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MARIA P.,

      Plaintiff,

    v.

FRANK BISIGNANO,
  COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

No. 24 CV 3530

Magistrate Judge McShain

**MEMORANDUM OPINION AND ORDER**

Plaintiff Maria P. appeals the Commissioner of Social Security's decision denying her application for benefits. For the following reasons, plaintiff's motion to reverse the Commissioner's decision [17] is granted, the Commissioner's motion for summary judgment [20] is denied, and the case is remanded for further administrative proceedings.[1]

**Background**

In March 2016, plaintiff applied for a period of Title II disability and disability insurance benefits as well as Title XVI supplemental security income, alleging an onset date of February 17, 2016. [12-1] 15. The claims were denied initially, on reconsideration, and after a hearing before an administrative law judge. [*Id.*] 15, 26. The Appeals Council denied review in March 2019, [*Id.*] 1–3, and plaintiff appealed to this Court. In May of 2022 the Court granted plaintiff's motion to reverse the SSA's decision and remand this case for further proceedings. *Maria P. v. Kijakazi*, No. 19 CV 3477, 2022 WL 1523639, at *7 (N.D. Ill. May 13, 2022). On remand, the ALJ held a hearing and again denied plaintiff's application for benefits. [12-2] 1299. Plaintiff did not file written exceptions with the Appeals Council and the Appeals Council did not review plaintiff's case on its own within sixty days after the date of the ALJ's decision, making the ALJ's decision the agency's final decision. [*Id.*] 1284–86; [17] 2; *See* 20 C.F.R. §§ 404.955, 404.981. Plaintiff has again appealed to this Court, and the Court has subject-matter jurisdiction under 42 U.S.C. § 405(g).[2]

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record, [12-1]; [12-2]; [12-5], which refer to the page numbers in the bottom right corner of each page.

[2] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. [8].

The ALJ reviewed plaintiff's claim in accordance with the Social Security Administration's five-step evaluation process. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. [12-2] 1289–90. At step two, the ALJ determined that plaintiff has the following severe impairments: "left shoulder impingement status-post arthroscopy and revision; right shoulder impingement status-post arthroscopy; myofascial pain syndrome; Chiari I malformation with cervical degenerative disc disease; and obesity" [*Id.*] 1290. At step three, the ALJ concluded that plaintiff's impairments did not meet or equal the severity of a listed impairment. [*Id.*] 1292. Before turning to step four, the ALJ ruled that plaintiff had the residual functional capacity (RFC) to perform light work except that she (1) cannot climb ladders, ropes, or scaffolds; (2) only occasionally crawl, but frequently crouch, kneel and stoop; and (3) cannot have concentrated exposure to hazards, defined as working at heights. [*Id.*] 1292–97. At step four, the ALJ held that plaintiff could not perform her past relevant work. [*Id.*] 1297. At step five, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform: maker (131,100 jobs), housekeeper cleaner (193,200 jobs), and laundry folder (19,500 jobs). [*Id.*] 1298. Accordingly, the ALJ ruled that plaintiff was not disabled for the relevant time period.[3]

## Legal Standard

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (internal quotation marks and brackets omitted).

## Discussion

Plaintiff argues that the denial of benefits should be reversed because the ALJ (1) failed to properly evaluate the opinion of Dr. Evans, her treating orthopedic surgeon, and (2) failed to properly evaluate plaintiff's subjective allegations of her symptoms or limitations. [17] 6–16. The Court agrees that the ALJ's discussion of Dr. Evans's opinion did not give "good reasons" for assigning less than controlling weight to his opinion, as required by the Seventh Circuit. *Brown v. Colvin*, 845 F.3d 247, 252

---

[3] Claimant filed a subsequent claim for Title II and Title XVI benefits on 04/25/2019 and the State agency found the claimant disabled for Title XVI disability benefits as of that date [12-2] 1287. The Appeals Council reviewed and affirmed the determination. [*Id.*]. Accordingly, the period under review is 02/17/2016-04/24/2019. [*Id.*].

(7th Cir. 2016). The Court finds that the ALJ also failed to adequately discuss the factors required by 20 C.F.R. § 404.1527(c) when weighing Dr. Evans's opinion. Accordingly, the Court finds that another remand is warranted to correct these errors.

### A. Treating Physician Rule

Because plaintiff applied for benefits before March 27, 2017, the ALJ was required to apply the "Treating Physician Rule[.]" *See e.g.*, *Marcus W. v. Bisignano*, No. 23 CV 1936, 2025 WL 2299601, at *2 (N.D. Ill. Aug. 8, 2025). This rule entitles a treating physician's opinion controlling weight if the opinion is both well supported by medical findings and not inconsistent with other substantial evidence in the record. *Brown*, 845 F.3d at 252 (7th Cir. 2016); *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2019). "When controlling weight is not given, an ALJ must offer 'good reasons' for doing so, after having considered: (1) whether the physician examined the claimant, (2) whether the physician treated the claimant, and if so, the duration of overall treatment and the thoroughness and frequency of examinations, (3) whether other medical evidence supports the physician's opinion, (4) whether the physician's opinion is consistent with the record, and (5) whether the opinion relates to the physician's specialty." *Brown*, 845 F.3d at 252; *see also* 20 C.F.R. § 404.1527(c)(2).

Dr. Evans, an orthopedic surgeon, saw plaintiff from 2010 through 2015. [12-1] 689; [12-2] 1175. As part of his treatment of plaintiff, he performed multiple surgeries. [12-1] 613–15, 1068–70. On 10/19/2015, Dr. Evans opined, in a medical source statement, that plaintiff could return to work, but had permanent restrictions in her ability to lift and carry:

> Maria [P.] has been examined by me on 3/3/2015 and is able to return to work on 3/3/2015 with the following limitations per her FCE [i.e., functional capacity evaluation] on 5/20/2014:
>
> Restrictions per FCE:
>
> Floor lift no more than 10 lbs occasionally
> Lifting up to level of shoulder no more than 5 lbs occasionally
> Carrying no more than 10 lbs occasionally
> Pull no more than 10 lbs occasionally
> No overhead reaching
> No ladder climbing
>
> **These are permanent restrictions**

[12-2] 1175 (emphasis in original)

The ALJ explained her decision to give less than controlling weight to Dr. Evans's opinion as follows:

> In accordance with the District Court remand order and subsequent Appeals Council direction, I further considered the opinion of Dr. Evans (Exhibits 14F; 15F). Dr. Evans offered permanent restrictions on October 19, 2015, apparently based on a May 2014 functional capacities evaluation, which is not in the file. The claimant representative stated at the June 2023 hearing that she was unable to locate this actual Functional Capacity Evaluation (FCE) given how old it is. Specifically, Dr. Evans provided a statement that he examined the claimant on March 3, 2015, at which time she was able to return to work based on the limitations identified at the FCE on May 20, 2014. This included permanent restrictions of floor lift no more than 10 pounds occasionally, lifting up to level of shoulder no more than 5 pounds occasionally, carry no more than 10 pounds occasionally, pull no more than 10 pounds occasionally, no overhead reaching, and no ladder climbing (Exhibits 14F/2; 15F/2). I note that the opinion of Dr. Evans is from before the claimant's alleged onset date, and they were permanent restrictions. This is not given controlling or any significant weight. While Dr. Evans was a treating doctor, his extreme findings are not supported by later examination findings which document few abnormalities (Exhibits 26F/4; 28F/1, 12, 15, 21; 31F/8).
>
> I did not provide articulation about the evidence that is inherently neither valuable nor persuasive in accordance with 20 CFR 404.1520b(c) and 416.920b(c).

[12-2] 1296.

In the prior remand, this Court explained that the ALJ's decision regarding Dr. Evans's opinion was inadequate under the treating physician rule because the ALJ failed to provide a "good reason" for affording less than controlling weight to Dr. Evans's opinion and the ALJ "did not adequately discuss the factors that determine what weight should be afforded to his opinion." *Maria P.*, 2022 WL 1523639, at *4–6. The Commissioner argues that the ALJ's most recent decision remedied these errors. The Court disagrees.

B. Good reasons

The Commissioner argues that the ALJ's discussion of other doctors' treatment notes, which she found to be inconsistent with Dr. Evans's opinion, serves as a "sufficient reason for rejecting a treating source opinion." [21] 3–4. The ALJ's does

discuss a treatment record from Dr. Kevin Orr, [12-2] 1169–72, as an example of a record that she finds inconsistent with Dr. Evans's opinion. [21] 3; [12-2] 1294. But this discussion is not new, the ALJ also cited Dr. Orr's treatment note in her 2018 decision. [12-1] 21. And this Court already gave several reasons for why that note was insufficient to support the conclusion that Dr. Evans's opinion was outdated:

> The ALJ cited to a treatment note prepared by Dr. Kevin Orr, who evaluated plaintiff at the Loyola Pain Medicine Clinic on May 19, 2015– barely two-and-a-half months after plaintiff's last appointment with Dr. Evans. Dr. Orr found that plaintiff retained flexion and abduction in both arms to 120 degrees. Plaintiff also told Orr that her pain was "better" when she took Aleve. Yet Dr. Orr's treatment note also documented that plaintiff still experienced pain when performing the flexion and abduction exercises; it also recorded plaintiff's statement that her "pain has been getting worse steadily." Unlike Dr. Evans, moreover, Dr. Orr did not translate his findings into work-related limitations. It is therefore unclear how this treatment note could support a finding that plaintiff's condition had materially improved, such that the ALJ could plausibly conclude that Dr. Evans's opinion about plaintiff's ability to lift and carry was outdated.

*Maria P.*, 2022 WL 1523639, at *5 (internal citations omitted). The ALJ's discussion of Dr. Orr's note in her 2024 opinion is substantially similar to her 2018 opinion, [12-2] 1294; [12-1] 21, and does not change the Court's stated conclusion from the prior remand.

The ALJ also cited, but did not discuss, treatment notes in support of her statement that Dr. Evans's "extreme findings are not supported by later examination findings which document few abnormalities[.]" [12-2] 1296. Because the ALJ did not discuss these notes, the Court is left to review them for itself and try and understand the basis for the ALJ's statement.

The first citation is a page from a February 2018 visit where the doctor recorded that plaintiff "is here because she now has insurance and wants to catch up with her health." [12-2] 1274. The doctor also recorded that plaintiff "states she had been diagnosed with Lupis and pre-diabetes. . . . Feeling weak, forgetful and very disoriented." [*Id.*]. While this note does not mention pain, it also records that plaintiff is feeling weak, and does not appear to contradict Dr. Evans's opinion that plaintiff's limitations regarding lifting were permanent.

The ALJ also cites several specific treatment records from an exhibit which contains records of plaintiff's eighteen visits to Premium Healthcare PC from December 2018 to December 2019. [12-2] 1296. The ALJ cites four of these visits: (1) an appointment made because of "[p]ossible bronchitis," [*Id.*] 1557; (2) a follow up

appointment after plaintiff had an allergic reaction to medicine, [*Id.*] 1568; (3) another follow up appointment regarding plaintiff's allergic reaction, [*Id.*] 1571; and (4) a visit after another allergic reaction to a different medicine and UTI symptoms, [*Id.*] 1577. Another citation is to an AdventHealth emergency room record after plaintiff was admitted due to epigastric pain following an endoscopy. [*Id.*] 1865. The treater in an AdventHealth emergency room wrote "[n]ormal strength . . . [and] pain-free after medications here, plan is discharge home[.]" [*Id.*]. While none of these treatment notes indicate that plaintiff would have difficulty lifting, the reasons for the visits were discrete issues unrelated to the restrictions discussed in Dr. Evans's opinion.

The Commissioner argues that the ALJ's reliance on records made after visits unrelated to plaintiff's alleged disability were justified because "there were no other physical examinations to consider[] . . . [and d]espite seeing her primary care physician regularly for complaints unrelated to her alleged disability, she did not report ongoing problems with her shoulders, and examiners did not document the presence of functional deficits related to her shoulders." [21] 4. After a review of the administrative record, the Court disagrees that the ALJ had no records related to plaintiff's alleged lifting limitation to analyze. For example, among the treatment notes from Premium Healthcare PC are several relevant findings. One such appointment was a follow up after plaintiff received an MRI. [12-2] 1583. At that visit plaintiff was assessed with "[c]ervical disc disorder with radiculopathy[.]" [*Id.*]. " 'Cervical radiculopathy' is defined as 'radiculopathy of cervical nerve roots, often manifesting as neck or shoulder pain.' " *Corcoran v. Peake*, No. 06-2893, 2008 WL 5101020, at *2 n.2 (Vet. App. Nov. 26, 2008) (citing DORLAND'S at 1595 (31st ed. 2007)); *see also Jeanette D. v. Saul*, No. CV CBD-18-2664, 2020 WL 1043264, at *5 (D. Md. Mar. 3, 2020) ("Radiculopathy . . . 'typically causes pain, numbness, or weakness in the part of the body which is supplied with nerves from that root.' "). After another visit, the treatment record noted that plaintiff had an appointment set with a pain specialist for treatment of her cervical disc disorder with radiculopathy. [12-2] 1587. Finally, a 2019 treatment note from AdventHealth (found in the same exhibit as the emergency room record cited by the ALJ) recorded that plaintiff complained of "pain entire neck with pain, numbness and tingling in both arms to hands for 1 year." [12-5] 2098. "Although a written evaluation of each piece of evidence or testimony is not required, . . . neither may the ALJ select and discuss only that evidence that favors h[er] ultimate conclusion." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) (citation modified); *see also*, *Seruya v. Berryhill*, No. 16 C 10896, 2017 WL 4650886, at *4 (N.D. Ill. Oct. 17, 2017) (ALJ cannot "cherry-pick[] . . . [by] citing only to treatment notes which reflected improvement or stability.").

For the reasons stated above, the Court finds that the ALJ did not provide a "good reason" as required by the Seventh Circuit when assigning the opinion of plaintiff's treating physician less than controlling weight.

C. Consideration of the regulatory factors of 20 C.F.R. § 404.1527.

When this Court first remanded this case, it explained that, in addition to failing to provide a good reason for affording less than controlling weight to Dr. Evans's opinion, the ALJ also failed to adequately discuss the factors required by § 404.1527(c)(2) to determine what weight should be afforded to his opinion. *Maria P.*, 2022 WL 1523639, at \*6. Specifically, the Court identified that the ALJ failed to discuss "the length and nature of the treatment relationship," whether Dr. Evans's specialty of orthopedic surgery gave him "specialized knowledge regarding Plaintiff's conditions and their effect on her functional capacity[,]" or the supportability of his opinion. *Id.* (citation modified).

In the ALJ's paragraph assigning less than controlling, or even significant, weight to Dr. Evans's opinion, she again fails to discuss the factors identified by the Court in the initial remand. [12-2] 1296. The Commissioner argues that the Court could infer that these factors were considered from the portion of the ALJ's decision where she discusses plaintiff's medical history. [21] 7 (citing *Paul M. v. Saul*, No. 19 C 4581, 2021 WL 794981, at \*4 (N.D. Ill. Mar. 2, 2021)). In discussing plaintiff's medical history, the ALJ did write that plaintiff "testified that Dr. Evans performed two left shoulder surgeries," [12-2] 1293, plaintiff "had left shoulder surgery in 2010", [*Id.*], and plaintiff received treatment from Dr. Evans though March 2015. [*Id.*] 1293–94. While it is possible to infer from these statements that Dr. Evans's is an orthopedic surgeon who saw plaintiff for at least five years, the ALJ never explicitly states that. [*Id.*]. More importantly, the ALJ does not give any indication that those facts were considered when discounting Dr. Evans's opinion. [12-2] 1296

It is also unclear to the Court the extent to which the ALJ considered the supportability of Dr. Evans's opinion. The ALJ again did not undertake any detailed review of Dr. Evans's treatment notes. [12-2] 1296. The ALJ did not even discuss the specific treatment note identified by the Court in the prior remand. In that note "Dr. Evans expressly opined in a July 22, 2014 treatment note that 'the functional capacity evaluation [was] valid,' and he imposed corresponding restrictions on that basis." *Maria P.*, 2022 WL 1523639, at \*6; [12-1] 1090; see also [12-1] 678 (imposing similar restrictions based on an earlier "valid" FCE). As this Court previously stated, "[t]his was significant evidence of the supportability of Dr. Evans's opinion, which the ALJ needed to address." *Maria P.*, 2022 WL 1523639, at \*6. Despite the Court's specific instruction to address the supportability of Dr. Evans's opinion and this note in particular, the ALJ failed to do so.[4] In the 2024 decision, the ALJ did note that the functional capacities evaluation used by Dr. Evans's was not in the file and that "[t]he claimant representative stated at the June 2023 hearing that she was unable to locate

---

[4] The Court notes that the ALJ did actually cite this treatment note in her decision. [12-2] 1293. However, rather than discuss the issues raised by the Court in its prior remand, the citation was only used to support the proposition that "it was unlikely that all her pains were related to her shoulder[.]" [*Id.*].

[it] . . . given how old it is." [12-2] 1296. But, again, if the ALJ thought it was necessary to see this evaluation, the ALJ "should have contacted Dr. Evans or made an effort to obtain the evaluation." *Maria P.*, 2022 WL 1523639, at *6.

For the reasons stated above, the Court finds that the ALJ did not adequately discuss the factors that must be analyzed to determine the proper weight to be afforded to Dr. Evans's opinion. This error was not harmless. "Had the ALJ credited Dr. Evans's opinion and incorporated these restrictions into plaintiff's RFC, plaintiff would have been limited to performing sedentary work, *see* 20 C.F.R. § 404.1567(a) . . . and the ALJ would have been required to find that she was disabled as of her fiftieth birthday. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, Rule 201.14." *Maria P.*, 2022 WL 1523639, at *2.

Because the ALJ misapplied the treating physician rule when she evaluated Dr. Evans's opinion respecting plaintiff's permanent lifting and carrying restrictions, this case must be remanded for further proceedings. Having found that the ALJ's misapplication of the treating physician rule constitutes a reversible error requiring remand, the Court need not address plaintiff's remaining contentions as to how the ALJ erred.

### Conclusion

Plaintiff's motion to reverse and remand [17] is granted and defendant's motion for summary judgment [20] is denied. The decision of the Social Security Administration is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: March 3, 2026**

8